## BALDWIN v. NIELSON.

No. 6908.   Decided November 18, 1946.   (174 P. 2d 437.)

For former opinion, see 110 Utah 172, 170 P. 2d 179.

*Oscar W. McConkie* and *Elias Hanson,* both of Salt Lake City, for appellant.

*Charles Welch, Jr.,* of Salt Lake City, for respondent.

WADE, Justice.

Defendant Nielson urges on the rehearing that the decision in this case is contrary to the established facts which show that the best interests of this child require that he be left in defendant's custody and not be placed in the custody of the plaintiff who is the natural father of such child. He contends that the evidence shows that the father failed to take any interest in the child until after its mother's death, that he had not at the time of the trial taken steady employmen during the few months since he was discharged from the armed forces, that he had married another woman who

has a child of her own about the age of this child, that the child is not acquainted with his father or stepmother but is acquainted with and adjusted to the home where he now lives with his maternal grandfather, uncle and aunt, who are very attached to him and he is very fond of them.

To supplement and emphasize the foregoing argument the defendant filed with his petition for rehearing affidavits of himself and the grandfather of the child, wherein it was stated that the father of the child had not visited with or inquired about the wellbeing of the child since the trial, and had not provided anything in the way of support for the child during that time. In answer to these affidavits the plaintiff filed affidavits by himself and his wife and statements by his employers to the effect that he had not visited with, inquired after, or furnished support for his son during the time since the trial on the advice of his lawyer, that he is now living happily with his wife, that he has a home where there is plenty of room for his son to live and a large yard for him to play in and plenty of suitable companions for him to associate with; that he lives in a desirable neighborhood where there are ample school, recreational, and religious facilities; that his wife is a suitable person to care for his son and that she is anxious to have him come and live with them, and that he is now permanently employed at $350 per month and is amply able to support his child. No further consideration of these affidavits will be made since we have reached the conclusion that it is not necessary to take further evidence in this case. We will decide this case on the evidence as it stood at the close of the testimony at the trial.

In stating the facts in our former opinion, we said in substance that at one time plaintiff took his wife and child to visit with his mother in Chico, California, for about ten days,

"during which time he went out with his brothers and sisters on drinking parties and was almost constantly intoxicated."

Plaintiff contends that this statement in regard to his intoxication is not justified by the evidence. Plaintiff testified on direct examination that for a period of about a week or ten days when he first returned home he "drank some," and "became intoxicated during that period." On cross examination he said that the time when he took his wife and child to visit his mother was the time to which he was referring in stating that he was drunk in his previous testimony. In answer to the question,

"* * * is it not a fact that you went out alone and was drunk a good deal of the time?" He said, "I went out with my brothers and sisters."

Thus plaintiff, instead of answering the question as to whether he was drunk a good deal of the time, evaded it. He did testify that he was drunk during that time, but whether he was drunk more than once, or how long that drunkness lasted, does not appear. However, his testimony was positive and not contradicted that from then on he did not use intoxicating liquors. We are of the opinion that whether he was drunk only once or a good deal of that time would make no difference to the result in this case.

Defendant urges that the decision in this case is contrary to the decision in the case of *Walton* v. *Coffman,* 110 Utah 1, 169 P. 2d 97, 102. There we held that the paramount consideration in a case of this kind is the welfare of the child, and that direct proof of what is for the best interest and welfare of the child may overcome the presumption that it is for the best interest of the child to be in the custody of its natural parent, even though it is not first shown that the parent is unable to support the child or that the parent is morally unfit to have its custody or that the parent has in some manner legally surrendered his right to the custody of such child. There we took the child, a girl of nine years, from her mother and stepfather and gave her to her maternal grandparents, on the showing that the mother and stepfather had over a long period of time indulged in drinking intoxicating liquors; and had often, over the week-end be-

come intoxicated and had gone away and left this girl to care for herself and three younger children; that this child had thereby been neglected. In so holding we said:

"We conclude that the determining consideration in cases of this kind is: What will be for the best interest and welfare of the child? That in determining this question there is a presumption that it will be for the best interest and welfare of the child to be reared under the care, custody and control of its natural parent; that this presumption is not overcome unless from all of the evidence the trier of the facts *is satisfied that the welfare of the child requires that it be awarded to some one other than its natural parent* * * *." (Emphasis our.)

There is nothing in the above quotation nor in the prevailing opinion in that case which lays down any rule or even in any degree implies that in the future a child could be taken from its natural parent on any less substantial or convincing evidence than had been previously required. In fact, we emphasized the presumption and the necessary requirements to overcome it. It is true that the dissenting opinion implied that in the future children might be taken from their parents on any whim of the judges, but no such doctrine as that was suggested or implied in the prevailing opinion. The limitations on the types of evidence which could be used in overcoming the presumption were removed, but under that case the evidence must still show that the welfare of the child requires that the child be taken from its natural parent, otherwise, it will not be taken from them.

The *Walton* v. *Coffman* case, supra, is clearly distinguishable from this case in that the evidence was conclusive that over a long period of time the mother and stepfather had indulged in intoxicating liquor and often became intoxicated over the week-end and as a result thereof, the child had been definitely neglected. Here the only showing is that the father did not pay as much attention to the child while it was in the care and custody of its mother as would be desirable, that he had not at the time of the trial taken steady employment during the few months since he was discharged from the armed forces, that he had married another woman

who had a child about the age of his child and that the child is acquainted with his maternal grandfather, uncle, and aunt, and is adjusted and happy where he is but is not acquainted with his father or stepmother and how he will react to them and his new home and surroundings cannot now be determined. In other words, the objection to the home which his father will provide for him is its unknown qualities rather than anything positive about it, which is generally recognized as a bad influence or condition. On the other hand, the child is adjusted to its present home and is apparently happy and very much attached to the three people with whom he lives and they are very much attached to him.

Do the foregoing facts show that the welfare of the child requires that he be allowed to remain in his present home rather than to be placed in the custody of his father? We recognize that this is a borderline case. We fully appreciate, although we feel that he slightly over emphasized the father's shortcomings, the arguments in Mr. Justice Wolfe's dissenting opinion. However, we are not convinced that the welfare of the child requires that he be taken from the father. The only evidence which tends to so indicate is evidence of uncertainty as to the kind of a home and raising he well receive with his father. There is nothing in the record which tends to show that the child's mental, moral, or physical welfare or his future happiness or development will be neglected or adversely affected if he is placed in his father's custody. The fact that the father is not acquainted with his child is the result of his being in the armed forces of his country rather than the result of his own wrong doing. In view of all of the surrounding facts and circumstances of this case, we are still of the opinion and hold that the welfare of the child does not require that he be taken from the custody of his father.

This case is in some respects similar to the case of *Sherry* v. *Doyle*, 68 Utah 74, 249 P. 250, 48 A. L. R. 131. There the mother died shortly after her son was born and a few months later the father placed him in the home of the Doyles, agreeing to pay a stipulated sum per month for his keep.

The child lived in this home for more than four years, and the father failed to keep up his payments for his care. The father, being unable to visit very often with the child in that home, arranged to place him in the home of another family where he would be able to see the child more often and the Doyles refused to surrender the child to its father. There, as here, the father was practically a stranger to the child and was taking the child out of the only home it had ever known, where it was adjusted to its surroundings and apparently happy, and placing it in a home where it was a stranger because the father could visit with it more often. There, as pointed out in the case of *Walton* v. *Coffman,* supra, the case was decided almost entirely on the basis of what was for the best interest and welfare of the child and not, although it could have been decided, on the basis that the father had not surrendered his right of custody which he was morally fit to have and was able to support the child. In other words, that case was decided on the rule adopted in the case of *Walton* v. *Coffman* and the rule which we are applying here, and we reached the same result in that case as we have reached in this case.

The previous decision of this court in this case is therefore affirmed with costs to the plaintiff.

McDONOUGH and PRATT, JJ., concur.

LARSON, Chief Justice (dissenting).

I dissent. I am unable to reconcile the holdings in this case with the rule laid down in *Walton* v. *Coffman,* 110 Utah 1, 169 P. 2d 97, and since the court is unwilling to modify the rule of the Walton case, I think it should be applied here. Under that rule, I think this record impels the conclusion that the child should be left with the respondent, Joseph George Nielson, Jr.

WOLFE, Justice (dissenting).

I dissent. My reasons for dissenting are the same as hitherto expressed in this case in my dissenting opinion. I

see no reason for repeating what was there said. In addition by way of elaboration in view of what was developed on rehearing, I make the following observations: We all agree that the paramount consideration in these cases is the welfare of the child. We also agree that there is a presumption that it is for the best interests of a child to be raised by its natural parent or parents. I think we would also agree that each case must stand on its own facts as to when that presumption is overcome. In this case I think it is overcome by showing that from birth this child was raised in this family where his mother had her home until she died; that it is happy there and well cared for; that this family consists of its relatives—to wit, aunt, uncle and grandfather; that, even giving the applicant the benefit of the affidavits and the most favorable view of the evidence, the removal of the child would be from an environment in which it is contented and well cared for to one of uncertainty; that taking a less favorable view of the evidence even with mollification of what was said in the former prevailing and my dissenting opinion as to the short comings of the father, the child would go into an environment where it would have to adjust to a stepmother whose paramount interest would probably be in her own child, and a father whose conduct, even after he came out of the army, was such that the quality and intensity of his interest in the child is doubtful. Under such circumstances, I think the presumption that the welfare of the child would be best served by giving it to its father is overcome. I think it should take less evidence to overcome the presumption when the application is not to take a child *from* its parent but to take it from a satisfactory home where it has been since birth and in which it is happy to give it to a parent who has *never* had custody of it and, under the most favorable interpretation of the evidence, whose home and interest are of uncertain and doubtful quality as far as environment for a child of tender years is concerned. There the principle should be "leave very well alone."