# BRIGGS v. BRIGGS.

No. 6974. Decided May 26, 1947. (181 P. 2d 223.)

See 39 C. J. S. Habeas Corpus, Sec. 42. Jurisdiction over custody of child brought into a state in violation of decree or order of another state, note, 107 A. L. R. 642. See, also, 25 Am. Jur. 204.

*Christenson & Christenson,* of Provo, for appellant.

*Hugh Vern Wentz,* of Provo, for respondent.

WADE, Justice.

Plaintiff, Lillian Mae Briggs, commenced habeas corpus proceedings against George S. Briggs for the custody of

Glenda Lanell Briggs, their minor child. Defendant appeals from a judgment awarding the child to plaintiff.

Both plaintiff and defendant are natives of Texas. They intermarried November 24, 1934, and at first lived at Port Arthur where they acquired a home and where Glenda on May 26, 1937, was born. Later they moved to Orange, Texas, but still retained their home in Port Arthur. While there some marital trouble arose and plaintiff took the child and went back to their home in Port Arthur. Shortly thereafter on July 3, 1944, defendant commenced a divorce action asking for the custody of the child. Plaintiff filed a cross-petition for divorce and the child's custody. A hearing was held on August 25, 1944; both parties were present and represented by counsel and each submitted evidence. At the close of the hearing Mrs. Briggs asked for a continuance to produce further evidence and the case was continued without date. At the hearing in the instant case Mr. Briggs testified that he asked his attorney to resist the motion for continuance, and when he refused he discharged his attorney and told him he was no longer representing him.

The child remained in the custody of the mother, who shortly thereafter sent her to her sister in Dallas, where she commenced school. A few days later on September 9, 1944, the defendant took her from the school grounds and brought her back to Orange where he telegraphed her mother that he had the child, and then continued into Louisiana and later into Arkansas, where he put the child in school and made application for work in a war plant. Upon taking his physical examination on account of sinus trouble, he was advised to apply for work at the Geneva Steel Plant in Utah, where the climate is dry. He obtained work at that plant and arrived in Provo, Utah, October 15, 1944, where he put the child in school and was working all through November, 1944.

While he and the child were in Utah and without any further communication with him, the trial of the case in Texas was resumed on November 16th. The court granted the mother a divorce, divided the property, awarded the

child to the mother for nine months and a week during the school term out of each year, and awarded her custody to the defendant during the remaining part of the year. The judgment contains the following recitals and provisions:

"* * * thereafter on the 16th day of November, 1944, came the parties in person and by attorneys * * * and did make known to the court that should the cross-plaintiff, Mrs. Lillian Mae Briggs, be awarded the custody and control of the child, Glenda Lanell Briggs, that in such event it would be agreeable to the parties for the cross-plaintiff to have the custody and control of the child during the school term, that is to say, not longer than nine months and one week out of each year, and that the defendant should have custody and control of said child for the remaining part of the year; * * *

"And the court having been informed as to the agreement between the parties as to the custody and control of such child, and believing that such agreement should be respected, it is therefore ordered and decreed by the court that the cross-plaintiff be awarded the custody and control of the child during the school year not to exceed nine months and one week, and that the cross-defendant should have the custody and control of said child for the remaining part of the year; * * *

"It is the further order of this court that said child shall remain in the State of Texas, and the court hereby orders that each of the parties to this suit keep the other informed as to the whereabouts of the child and that neither of the parties to the suit shall have the right and they are hereby expressly forbidden from removing the child outside of the state of Texas without the joint consent of the other party and without the consent of the court."

Defendant testified that after the November hearing in Texas he received a letter from his brother, stating that the brother had represented defendant at the November hearing and they had forced him to trial; he further testified that neither his brother nor any one else had any authority to represent him at that hearing. Prior to the time defendant left Texas he was represented by another lawyer not defendant's brother, and there is no evidence in any record before us that defendant's brother ever appeared or represented defendant in any of the proceedings in the divorce matter. Although both plaintiff and defendant pleaded and testified that defendant was not in court at the November

hearing in Texas, there is no explanation whatever of who purported to represent defendant at that hearing, how the court was misled into believing that defendant was present in court, or who purported to make the stipulation respecting the custody of the child at that hearing.

Defendant married his present wife on May 8, 1945, and on the 14th he was transferred to Tooele, Utah, where he was employed until July 21st, when he was transferred to Bremerton, Washington, where he remained until after the war ended. He with his wife and daughter returned to Provo on Labor Day in 1945 and thereafter settled in Springville, where he has resided ever since.

Immediately after defendant took the child from Dallas, Texas, plaintiff commenced a search for them. She learned through his brother that defendant was in Utah and in August, 1945, she employed a detective at Ogden to locate them. She came to Ogden when he notified her that he had found them. This detective on June 12, 1946, took her from Ogden to Provo where they picked up the sheriff of Utah County and proceeded to defendant's home in Springville. They found Mrs. Briggs and the child at home but on being refused permission to take the child, commenced this action. On June 13, 1946, the child was brought into court and a hearing had. At that time the court placed the child in the custody of plaintiff's attorney with permission to turn her over to her mother pending the trial. The trial was continued until June 17th and at the end thereof the court ordered the child placed in the custody of the plaintiff upon her delivering to the clerk of the court a deed to the home in Texas, the same to be delivered to the defendant in case this decision was reversed on appeal and plaintiff failed to surrender the child to the court for further proceedings thereunder. Although at that time no findings of fact or decree had then been signed, the court refused to give defendant even one day in which to apply to this court for a stay of the proceedings and a retaining of the child within this jurisdiction pending the appeal.

Defendant urges that the court erred in refusing to retain the child in this jurisdiction long enough to allow defendant to apply to this court for some relief which would make effective his appeal. The child is now beyond the jurisdiction of this court and will probably so remain, notwithstanding the deed to the Texas property and regardless of the result of this appeal. The trial court should have retained jurisdiction over the child long enough to allow the defendant to present the matter to this court. The court was confronted with a hard problem, of either destroying the effectiveness of defendant's appeal or requiring the child to remain in this jurisdiction during its pendency. What this court would have done does not appear, but it was a situation where it would have been very appropriate to allow the matter to be presented to this court.

It is contended that the Texas judgment, made as it was while the father and child were out of the state, purportedly on a stipulation which was not assented to by him, and under the facts and circumstances above detailed, was void insofar as it attempted to determine the rights of the parties to the custody of the child. It is further contended that even though it were entitled to full faith and credit and binding on these parties, still there has been a substantial change in conditions since its rendition, and that therefore based on these changed circumstances the defendant has another cause for action, and therefore the Texas judgment is not binding on this court. The trial court allowed the defendant to show facts and circumstances which occurred since the Texas decree but refused to consider any facts or circumstances prior thereto.

Defendant assigns this as error. He contends that the paramount issue here is what will be for the best interest and welfare of the child. That in determining that question the court should not close its eyes to pertinent facts which have a bearing thereon. In this respect the defendant offered to show that from the birth of the child the mother had been indifferent to its needs, and lax in giving it the necessary mother's love and care; that all during their lives

together, on Sundays, holidays and evenings whenever he could be home with the child, the mother had gone out with friends and left them home together, that she became angry with the child without grounds therefor, and unreasonably whipped the child without provocation. On the other hand, he has always been very fond of the child, has stayed home and cared for her whenever his work would permit, has learned to take care of her needs as a baby as well as the mother, that he has done everything for her that it was possible for a father to do. That as a result thereof he and the child are greatly attached to each other. Evidence to this effect was testified to by the child and the father, but not as fully as defendant wished. The court, however, refused to consider any evidence of facts which occurred prior to the Texas decree.

The defendant testified that he took the child from Texas and concealed her whereabouts from the mother on account of his strong attachment for the child, and to avoid being separated from her; that during the time the child was with him he looked after her every need; that he was with her personally as much as possible, and provided competent persons to look after her while he was away at work, kept her in school during school terms, carefully looked after her health, social welfare and religious training, and was giving her a musical education. He and the girl and his present wife testified that the child and present wife were greatly attached to each other and get along well together; that the present wife treats the child with kind motherly consideration, and is well qualified to look after the child's needs from a social, religious and educational standpoint; that she is a good housekeeper, keeps the child clean and properly dressed; that the three of them are adjusted to their home and home life and are happy together. He offered to prove that the child was very anxious to be awarded to her father, and much opposed to going with her mother. This the court refused to allow, but from the evidence received and the interview which the court had with the child it is clear that such was the child's desire. Defendant assigns the refusal to receive this evidence as error.

It is not necessary for us to decide whether the Texas judgment is valid nor the extent, if any, it is binding on us, nor whether the court should have considered evidence of events and conditions which existed prior to that decree, nor whether the child should have been allowed to state with which parent she desired to make her home. Because, after a careful consideration of all the evidence and defendant's offers, we are not convinced that it is for the child's best interest and welfare to be awarded to defendant. As previously pointed out, the court did hear most of the questioned testimony and the record discloses what its nature and extent would have been, so we are in a position to decide therefrom what would be for the best interest of the child on the record and the offers of proof without having before us the testimony in full. However, we wish to make it clear that we are not holding or intimating how either or any of the above problems should have been decided. We simply hold that regardless of how these problems should have been decided defendant failed to make a case and therefore it is not necessary for us to pass on them.

The above statement of facts as claimed by defendant is stated as favorably to him as the record would justify. On the question of the mother's relationship to the child prior to the Texas divorce, the court ruled against the father's offer and therefore it was not necessary for her to offer rebuttal testimony thereon. The evidence is uncontradicted and conclusive that she still owns the home in Port Arthur; that she lives therein with her father and sister, and rents part of it out to another family; that she works out during the week days; that she can provide someone to look after the child while the mother is at work and the child is not in school; that she lives in a desirable neighborhood with ample school facilities, and where there are many desirable children to associate and play with; that the home is well kept, the educational, religious and social background is good; that the mother is able to provide for and that morally she is a fit and proper person to rear her

child. The mother has shown a great interest in the child and a strong desire to be with her by continuing an intensive search for the child during the time the father kept her whereabouts a secret.

This is not a contest between a parent of the child and a stranger to her but between the parents of the child who are separated. In such cases Sec. 40-3-10, U. C. A. 1943, provides:

"In any case of separation of husband and wife having minor children, the mother shall be entitled to the care, control and custody of all such children; provided, that if any of such children have attained the age of ten years and are of sound mind, they shall have the privilege of selecting the parent to which they will attach themselves; provided further, that if it shall be made to appear to a court of competent jurisdiction that the mother is an immoral, incompetent or otherwise improper person, then the court may award the custody of the children to the father or make such other order as may be just."

Since the child is less than ten years old and there is no claim that the mother is immoral or incompetent she is entitled, under that statute, to the custody of the child unless it is made to appear that she is an "improper person." If the term "improper person" means a person who, on account of some fault or defect, is inherently improper to rear a child, that is, a person who is unfit or disqualified for that purpose, then clearly the plaintiff is entitled to have the custody of this child. The most that is claimed against her is that she does not get along as well with the child as could be desired of a mother, that she often left it with its father when he was home and went out with other friends, that she easily became angry with it and on three or four occasions she rather severly whipped the child on account of disobedience to her. This evidence of itself without a comparison between her care of the child and the care the father would give it comes far short of showing that she is an improper person to have the care, control and custody of her child.

But defendant contends that the term "improper person" was used in this statute in a comparative sense. That the

proper person to have the custody of a minor child under this statute is the one to whom the best interest and welfare of the child requires that it be awarded and that any other person who would not subserve the interests of the child so well would be an improper person to have its custody. Under that construction the mother would be an improper person to have the custody of this child if the welfare and best interest of the child required that it be reared by its father, and the determining factor would be what, under the surrounding facts and circumstances, would be for the best interest and welfare of the child. That is the rule which we have adopted in child custody cases not covered by this statute. This is true both in habeas corpus proceedings in the district court and proceedings in the juvenile court. *Walton* v. *Coffman*, 110 Utah 1, 169 P. 2d 97; *Baldwin* v. *Nielson*, 110 Utah 172, 170 P. 2d 179, on rehearing, 110 Utah 180, 174 P. 2d 437; *In re Bradley*, 109 Utah 538, 167 P. 2d 978; *In re Olson*, 111 Utah 365, 180 P. 2d 210. In the recent case of *Anderson* v. *Anderson*, 110 Utah 300, 172 P. 2d 132, although we did not directly refer to or discuss this statute, or the meaning of this term, we applied this rule and took a child from the mother and gave it to its father because we were convinced that the best interest and welfare of the child requires such a change. The facts in that case brought it within the provisions of this section but we took this one child from her notwithstanding the fact that we approved a finding that she was a fit person to have the custody of her children and allowed her to retain the custody of other children of the parties.

We do not here have to determine the correct construction of this statute because under defendant's own construction he cannot succeed. We are not unimpressed with the strong affection existing between the defendant and this child, with the care and attention he gave her while he had her with him, with the fact that his present wife is devoted to and has won the love and respect of this little girl and that all of them were living happily together and were adjusted to each other and their home. But we cannot over-

look the fact that at the time of the trial the child had been living with her father and had not lived with her mother in twenty-one months, and that this situation was the result of his own deliberate taking of the child from the state where the mother lived without disclosing their whereabouts to her. During that time he had the opportunity to ingratiate himself in the affections of his child and to cause the shortcomings of the mother to become exaggerated in the child's mind. It is impossible for us to tell how the child would feel toward her mother had she had the opportunity of associating with her during that time. Under this statute the mother is entitled to the custody of the child unless it is made to appear to the contrary. Thus the burden of convincing the court is on the father. We must also keep in mind that ordinarily no one can take the place of a mother in the life of a girl of this age. In view of all of the facts and circumstances presented we are not convinced that the best interests of this child requires that the mother be deprived of her custody and she be awarded to her father. The judgment of the trial court is affirmed and plaintiff shall recover her costs.

WOLFE and LATIMER, JJ., concur.

PRATT, Justice (concurring).

I concur. However, in my opinion, the following quotation from the case of *Cooke* v. *Cooke*, 67 Utah 371, 248 P. 83, 107, is decisive of this case on the issue discussed:

"The Nevada court thus having acquired jurisdiction of the cause, and the plaintiff having there entered a general appearance, or, if not, he, having been personally served with copies of the summons and the complaint, and thereby having actual knowledge of such proceeding, could have entered his appearance in the cause and pleaded to the merits denying the defendant's averments as to her residence in Nevada and that she was a fit and proper person to have the care and custody of the child, and as well there as here could have pleaded his Canadian and California judgment and all that he claimed for them in resisting the defendant's claim of custody of the child. But he failed to do so and now claims the right in this proceeding to litigate what he, if his contentions are tenable, could there have been litigated. We

think the Nevada judgment, except as it may be assailed on the ground of fraud or want of jurisdiction, neither of which is here done, is binding upon the plaintiff not only as to the dissolution of the marriage, but also as to the custody of the child, except as to subsequent changed conditions affecting in a substantial degree the interest and welfare of the child, but no such conditions are either alleged or proved."

See 160 A. L. R. 396 and annotation; and A. L. I. Restatement of the Law, Conflicts of Laws, Sec. 147, p. 212. I agree that the evidence presented by defendant does not show such a changed condition as would necessitate a change of custody from mother to father.

McDONOUGH, C. J., concurs in the result.