## SAMPSELL v. HOLT.

No. 7204.   Decided February 8, 1949.   (202 P. 2d 550.)

Rehearing Denied April 4, 1949.

*George A. Critchlow* and *Keith Browne,* both of Salt Lake City, for appellant.

*Grant Macfarlane, Irwin Clawson* and *Pugsley, Hayes & Rampton,* all of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal by the defendant Gladys J. Sampsell Holt, from an order and judgment of the Third District Court in and

for Salt Lake County, Utah, purporting to amend a decree of the Eighth Judicial District Court of Nevada. The Nevada decree was entered in a divorce suit commenced therein by Gladys Sampsell Holt, the defendant herein, against plaintiff, her husband, defendant in the Nevada suit. By the terms of the Nevada decree, plaintiff there and defendant herein was awarded sole custody of Joel Sampsell, the infant son of the parties. The judgment below purports to modify the Nevada decree by awarding to plaintiff herein the custody of the infant son during the months of June, July and August of each year.

The facts out of which this case arises are as follows: The plaintiff and defendant intermarried on October 31, 1941, and lived together as husband and wife until June 3, 1946, making their home in San Marino, California. Their son was Born September 13, 1944. On June 3, 1946, the parties separated, and shortly thereafter, in July, 1946, defendant advised plaintiff of her love for and intent to marry William Holt, her present husband. On October 26, 1946, defendant took the boy, Joel, to Las Vegas, Nevada, and on December 11, 1946, instituted divorce proceedings against plaintiff in the Eighth Judicial District Court of Nevada, which proceedings culminated in a divorce decree on February 4, 1947. By terms of the decree, custody of the child was awarded to defendant herein (plaintiff there). In June 1947, defendant married the afore-mentioned Holt, and they moved to Salt Lake City, where they have resided ever since.

In October, 1947, plaintiff commenced the present action seeking the custody of his child, Joel. It is not necessary here to review all of the evidence adduced at trial. Suffice it to say that the evidence shows quite satisfactorily that both parents were able and willing to provide the child with a comfortable home; that both parents are in better than average financial circumstances; that both parents are interested in the child and desire his companionship; that there are no moral objections to either parent as custodian

of the child; that there would be certain psychological advantages and also certain psychological disadvantages to the child in awarding the mother (defendant) sole custody of the child, and likewise there would be both advantages and disadvantages in dividing custody between the two parents, so that each had custody of the child for a fixed period each year.

The argument most strongly relied upon by defendant and appellant, Mrs. Holt, to overturn the ruling of the trial court is based on Sec. 40-3-10, U. C. A. 1943, which provides as follows:

"In any case of separation of husband and wife having minor children, the mother shall be entitled to the care, control and custody of all such children; *provided*, that if any of such children have attained the age of ten years and are of sound mind, they shall have the privilege of selecting the parent to which they will attach themselves; *provided further*, that if it shall be made to appear to a court of competent jurisdiction that the mother is an immoral, incompetent or otherwise improper person, then the court may award the custody of the children to the father or make such other order as may be just."

Defendant earnestly contends that since there is no showing that she is an "immoral, incompetent or otherwise improper person" to care for the child, she is entitled as a matter of absolute right to his custody.

Plaintiff, on the other hand, argues that Sec. 40-3-10 has no application to the facts of this case; that by its express terms it applies only to separation cases, and not to divorce actions or child custody suits; and that under the terms of Sec. 40-3-5, U. C. A. 1943, the court was authorized to modify the original decree (of the Nevada Court) and award partial custody to the plaintiff. The section last cited provides, insofar as material here, as follows:

"When a decree of divorce is made the court may make such orders in relation to the children, property and parties, and the maintenance of the parties and children, *as may be equitable;* * * *. Such subsequent changes or new orders may be made by the court with

respect to the disposal of the children or the distribution of property as shall be reasonable and proper." (Italics added.)

At first blush the two sections appear to be somewhat inconsistent. Sec. 40-3-5, insofar as it relates to the custody of children, appears to be merely declarative of the well established principles of equity, that in determining child custody cases, the welfare and best interest of the child is of paramount importance, and is controlling. The history and development of this doctrine is briefly traced in the prevailing opinion in *Walton* v. *Coffman*, 110 Utah 1, 169 P. 2d 97. Sec. 40-3-10, however, seems to place the paramount right of control and custody in the mother, subject to certain exceptions. However, the two statutes can be reconciled, and full effect given to the provisions of each.

An examination of the legislative history of the two sections reveals that Sec. 40-3-5 has been on the books since 1898 in language almost identical to its present day form. See R. S. 1898, Sec. 1212. In 1903 it was proposed by the terms of H. B. 154 to amend Sec. 1212, now 40-3-5 as follows:

"An Act to Amend Section 1212, of the Revised Statutes of Utah of 1898, Relating to the Care, Custody and Control of Minor Children and their Disposition and the Disposition of the Property of Parties in the Event of Divorce.

"Be it enacted by the Legislature of the State of Utah:

"Section 1. That Section 1212 of the Revised Statutes of 1898, be and the same is hereby amended so as to read as follows:

"Section 1212. That in the case of the separation of husband and wife having minor children, the mother of said children shall be entitled to the care, control and custody of all such children; Provided, that if any of said children have attained the age of twelve years and are of sound mind, such children shall have the privilege of selecting to which of the parents they will attach themselves.

"Section 2. Whenever a divorce is decreed the court may make such order in relation to the children, property, parties and maintenance of the parties and children as shall be equitable, and subsequent changes may be made by the court in respect to the disposal of children or the distribution of property as shall be just and proper.

"Section 3. All acts and parts of acts conflicting herewith are hereby repealed.

"Section 4. This Act shall take effect upon approval."

It will be noticed that in this proposed bill the essence of what is now Sec. 40-3-10 was contained in Sec. 1, and the substance of Sec. 40-3-5 was contained in Sec. 2. The bill took the form of an amendment to the then Sec. 1212, now 40-3-5, by adding thereto a provision for custody of the children "in the case of the separation of the husband and wife."

The bill was amended in committee by changing the title as follows:

"An Act Relating to the Care, Custody and Control of Minor Children in the Event of Separation of Husband and Wife."

Sections 2 and 3 were stricken from the act as well as the first three lines of Sec. 1, providing for amendment of Sec. 1212. Thus, as reported out of committee, the bill took the form of a separate act relating to the custody of children in the event of separation of husband and wife.

The bill, as enacted by the 1903 Legislature, was in substantially its present day form. The title of the bill as reported out of committee was not further amended.

Thus, we see that the Sec. 40-3-10 originated as a proposed amendment to Sec. 40-3-5. Apparently it was the intent of the Legislature to provide some rules for the custody of minor children during the times when the parents were separated by agreement, or by refusal of one to cohabit with the other, but before any judicial decree of divorce had been made. The words "in any case of *separation*" used in Sec. 40-3-10 are not without significance. Had the legislature intended the terms of that section to apply in cases of divorces, it would more accurately have used the word "divorce" instead of the word "separation."

Moreover, it seems unreasonable to attribute to the legislature a purpose or intent to give to a divorced mother an

absolute right to the control and custody of a child **under**
ten years of age, without regard to the best interest
of such child. For many centuries, it has been the ██
policy of the law in matters of this sort to give con-
trolling weight to the considerations of the best interest of
the child. There is nothing in the legislative history of
these sections to indicate that it was the intent of the legis-
lature to alter this principle. Sec. 40-3-10 must be under-
stood as applying only to cases of separation, and not to
cases of divorce.

We are not unmindful that prior opinions of this court
have intimated that Sec. 40-3-10 was applicable to divorce
actions. In all probability, that section is generally under-
stood by the bench and bar of this state as being applicable
to divorce suits. However, the question has never been
squarely presented to this court before, and there has been
no occasion heretofore for the court to analyze with great
care the real problem. The result has merely been assumed
by both court and counsel without careful consideration of
the phraseology of the statutes, and without examination
of the legislative history of the statutes.

In holding as we do, we do no violence to previously estab-
lished concepts. Even in those cases, intimating or assuming
that Sec. 40-3-10 was applicable to divorce suits, it was held
that under such

"statute, the paramount question still remains what disposition of
the custody of the child is for its best interest and welfare?" *Cooke*
v. *Cooke*, 67 Utah 371, 248 P. 83, 102. See also the recent case of
*Briggs* v. *Briggs*, 111 Utah 418, 181 P. 2d 223.

We are not unmindful that it can be argued with some
reason, and has been forcibly argued by appellants in this
case, that Sec. 40-3-10 is applicable to divorce actions and
proceedings subsequent thereto, relating to the custody of
minor children. Such an interpretation, as well as other
possible interpretations which might be placed upon Sec.
40-3-10, have been carefully considered. However, having

in mind the legislative history of the statute, and the long established policy of the law in regard to awarding custody of children, we are of the opinion that Sec. 40-3-10 was not intended to apply in divorce cases, but only in the case of separation. It follows, therefore, that defendant is not entitled, as a matter of law, to the custody of the minor child.

Child custody proceedings are equitable in the highest degree, and this court has consistently held that the best interest and welfare of the minor child is the controlling factor in every case. *Walton* v. *Coffman*, 110 Utah 1 169 P. 2d 97, and cases there cited. Such proceedings being equitable, we may review the facts as well as the law on appeal. In this case there is some serious conflict in the evidence in certain particulars.

Two psychiatrists, one for each side, testified at the trial. One testified that it would be to the best interest of the child to be with his father for a portion of each year, so that the father might have some influence on the child during the formative years of his life. The other testified that it would be to the best interest of the child to remain continuously in the same happy, secure home. On this conflicting evidence, the court found that it would be

"for the best interests of said minor child to enjoy the society, counsel and advice of his father for the three summer months of June, July and August of each year * * *."

We are not disposed to upset that finding. The trial judge had the opportunity, as we do not, of seeing the parties and the witnesses, of observing their demeanor, and of forming opinions. On the record before us, it cannot be said that the finding of the trial judge is erroneous, and it is therefore sustained.

We treat next the contention that the decree below was void because the Utah court, by the phrasing of its decree, attempted to amend the divorce decree of the Eighth Judicial

District Court of Nevada. It is undoubtedly true that the courts of this state have no jurisdiction to alter, amend, or revoke, valid judgments and decrees of courts of competent jurisdiction of sister states. The trial court erred in phrasing its decree in such fashion as to amend, or purporting to amend the Nevada decree. However, this error was formal only, and may be corrected without reversing the result, or requiring a new trial.

By the weight of authority it is now well established

"that in the absence of fraud, or want of jurisdiction, affecting its validity, a decree of divorce awarding the custody of a child of the marriage must be given full force and effect in other states as to the right to the custody of the child *at the time and under the circumstances of its rendition;* but that such a decree has no controlling effect in another state as to facts and condition arising subsequently to the date of the decree; and the courts of the latter state may, in proper proceedings award the custody otherwise upon proof of matters subsequent to the decree which justify the change in the interest of the child." (Italics added.) 20 A. L. R. 815.

The rule thus stated has been followed in this state. *Cooke* v. *Cooke,* 67 Utah 371, 248 P. 83; 72 A. L. R. 444 note. Later cases on this same point are collected in *Goldsmith* v. *Salkey,* 131 Tex. 139, 112 S. W. 2d 165, 116 A. L. R. 1299 and *McMillin* v. *McMillin,* 114 Colo. 247, 158 P. 2d 444, 160 A. L. R. 400.

Defendant concedes the correctness of the above stated rule, but contends that there is no pleading or proof of change in circumstances since the entry of the Nevada decree of such nature as to require or permit a decree changing the custody of the child. The changes of condition pleaded and admitted were the subsequent marriage of defendant to Mr. Holt, their removal to Salt Lake City, the birth of a baby to them and the lapse of 14 months' time, making Joel Sampsell more than three years old. The trial court found that the change in these factors was of such nature and importance as to justify the making

of a new order respecting custody of the infant Joel Sampsell. It cannot be said that the trial court erred in so ruling.

The decree of the trial court was as follows:

"Now, therefore, it is Ordered, Adjudged and Decreed *that the decree heretofore rendered on February 4, 1947, in the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, entitled Gladys J. Sampsell v. Paul W. Sampsell, Jr., case No. 33836, wherein Gladys J. Sampsell, now Gladys J. Sampsell Holt, was awarded the sole care, custody and control of said minor child Joel Warren Sampsell, be and the same is hereby modified to read* as follows:

"That the plaintiff Gladys J. Sampsell (Holt) is awarded the care, custody and control of said minor child Joel Warren Sampsell during the months of January through May and September through December of each year, and the defendant Paul W. Sampsell, Jr., is awarded the care, custody and control of said Joel Warren Sampsell, during the months of June, July and August of each year.

"That the said Gladys J. Sampsell (Holt) shall deliver the said child Joel Warren Sampsell to the said Paul W. Sampsell, Jr. at his request in Salt Lake City on June 1st of each year, and the said Paul W. Sampsell, Jr., shall return the said minor child to the said Gladys J. Sampsell (Holt) on August 31st of each year in Salt Lake City, Utah. During the time the said Paul W. Sampsell, Jr., has the custody of said minor child he shall have the right and privilege of keeping said minor child in California." (Italics added.)

That portion of the decree italicized in the above quotation is ordered stricken, and the decree as thus modified is affirmed. Costs to respondent.

WADE, LATIMER and McDONOUGH, JJ., concur.

PRATT, Chief Justice (dissenting).

I dissent. I do not think that after a section of our Code has stood for some forty years or more as part of the Divorce Chapter of our Code, and not as a part of the Separate Maintenance Chapter; and after we have rendered repeated decisions applying that section of the Code to divorce cases, we should now suddenly conclude that it was really intended to be under the Separate Maintenance Chapter. The Legis-

lature has met repeatedly since that Code Section was enacted in 1903, and has never given any indication that this Supreme Court misinterpreted the section; and that it should have been printed as a part of the Separate Maintenance Chapter of the laws.

On the merits of the case, I have this to say: The complaint in this case is not founded upon the theory that there has been a change of circumstances which would show that the award by the Nevada Court of custody in the mother should be modified. The complaint is predicated upon the theory that the Nevada Court had no jurisdiction to render a decree of divorce, and therefore, in the language of the complaint

"* * * no court of competent jurisdiction having personal jurisdiction of plaintiff, defendant and minor child, Joel Warren Sampsell, has ever determined custody and visitation rights of the parties."

Then the complaint proceeds to extol the virtues of plaintiff, and besmirch the morals of the mother, referring to a time prior to the Nevada decree, and attacks the character of the present husband as an excessive user of intoxicating liquor.

The issue then is one of custody founded upon the theory that there has never been a divorce, as plaintiff claims the Nevada decree

"is invalid for the reason that the said defendant was not, nor did she intend to become at the time of the entry of said decree, a resident of the State of Nevada."

Plaintiff started suit for divorce in California in January, 1947, and it was scheduled for trial in April, 1948.

The lower court from which this appeal came, found against these allegations, finding nothing against the Nevada decree, and finding that the mother was a proper person to have the custody of the child. Then the court included a finding that Section 9462, Laws of Nevada, 1947,

authorized modification of the custody of the child during its minority and when it appeared to the best interests of the child. After this finding, the court finds that the circumstances of the mother have changed by remarriage and the birth of another child, and the child in question has become older; and that it would not impair the health of the child to spend three months with its father in California. Upon these findings the court proceeded to modify the Nevada decree.

This is obviously something more than merely an error in phrasing a decree. There are absolutely no pleadings or issues to support a decree founded upon a change of circumstances. The issues have been found against plaintiff in the lower court; and to attempt to grant plaintiff relief thereon is, to say the least a complete nullification of our recognized method of pleading issues for court determination.

Were the issue of change of circumstances in the picture, I believe there has been a failure of proof.