262 P.2d 283

**SMITH v. SMITH.**

No. 8004.

Supreme Court of Utah.

Oct. 27, 1953.

Sumner J. Hatch, Salt Lake City, for appellant.

E. Earl Greenwood, Jr., Owen & Ward, Salt Lake City, for respondent.

WADE, Justice.

This is a contest between the parties in a divorce action for the custody of their four year old son. Plaintiff Miles Murray Smith, appellant here, and defendant Phyllis D. Smith, respondent here, intermarried on June 12, 1948, and their son Garvyn Varley was born on February 12, 1949. Plaintiff commenced this action and defendant counterclaimed and was granted a divorce on June 4, 1951. Custody of their son was awarded to plaintiff for the first six months and to the defendant for the next six months and was decreed to alternate from one to the other every six months thereafter. Defendant took work during the first six months period at the Tooele Ordnance Depot and allowed plaintiff to retain the child's custody until this dispute arose, when each filed a separate petition that the decree be modified by awarding to such petitioner the sole custody of the child. These petitions were heard jointly on February 16, 1953, and the court made findings of fact, conclusions of law and decree awarding the custody of the child to defendant from which plaintiff appeals contending that the decree is not supported by the evidence.

There is little dispute in the evidence. It discloses that defendant has been married three times and divorced twice and this is her only child. She married Mr. Trask, her present husband on July 5, 1952, and has made her home with him since that time. He is a roofer by trade and owing to the seasonal nature of that trade in Utah they have moved from here to California in the fall and returned back to this state in the spring, thus making two moves during the normal school year. Mr. Trask testified that he was attached to the child and loved its mother and was willing and able to support it in his home, that if necessary he would obtain work in Utah during the winter other than roofing but failed to indicate that he felt that such necessity had arisen. He further admitted that he had a daughter about 10 years old by a previous marriage whom he had not seen nor contributed to her support for a long time, and that on account of sickness he had accumulated some debts which he had been unable to pay. The defendant testified and the court found that she had visited the child during the time that it was in plaintiff's custody, that it recognized her as its mother and was attached to her and that she is now able to spend her full time caring for the home and the child.

After the divorce the plaintiff took the child to live with his mother until he was married to another woman on September 12, 1952. Since that time, until it was taken from his custody, the child lived with

them. He has worked for seven continuously for the Mountain Fuel Supply, and earns $240 per month. He lives in Salt Lake City in a duplex, which he is purchasing. While the child lived with him plaintiff spent several hours a day with the child, who is very much attached to plaintiff and his present wife. His present wife is also attached to the child and desires to have him live with them. She testified that she plans to set up a trust fund for the child's advance education out of an estate which she inherited from a former husband who is deceased, and that she will do this regardless of whether plaintiff is awarded the child's custody in this action. There is some evidence that on occasions the plaintiff has become intoxicated, and that sometimes defendant has taken a drink with him.

■ The determining issue here is what will be for the best interest of the child.[1] This is an ultimate question of fact which the trial court found in the mother's favor. Child custody cases are equitable in nature and so we must review both the law and the facts.[2] Here we have a double problem of determining not only the occurrences and events here involved but the much more uncertain and controversial problem of trying to look into the future and see the effect on the happiness and well-being of the child each course will bring, and thus determine which course

will be for the best interest of the child. In making this decision we must keep in mind that the trial court saw and heard the witnesses when they gave their testimony and is thus in a much better position to understand and evaluate their testimony than we are from reading the cold record. This is particularly true in determining which will best serve the interests of the child, for the trial court has seen the contestants in action, has observed their personalities, manners and attitudes, and has had the opportunity to evaluate the ability of each of the parties concerned to win the friendship, confidence, love and control of the child and the effect on its life that association with each of such parties may have. In view of these facts we hesitate to overturn the findings of the trial court unless we find them evidently erroneous.[2]

■ In many respects the evidence tends to favor the father. He appears to be more secure financially, he has a permanent home and job and there is no evidence of bad debts. The mother is married to a man who has debts which he is presently unable to pay, who moves from state to state to keep employment. The father has only been divorced once and the mother twice. The mother's present husband has also been divorced and has a daughter whom he does not see or support. The father has always supported this child, his present wife has

1. See Walton v. Coffman, 110 Utah 1, 169 P.2d 97; Briggs v. Briggs, 111 Utah 418, 181 P.2d 223; Sampsell v. Holt, 115 Utah 73, 202 P.2d 550; Stuber v. Stuber, Utah, 244 P.2d 650.

2. See cases cited in note 1.

not been divorced but lost her previous husband by death and she proposes to take part of her deceased husband's estate and create a trust fund for the child's advance education. She and the father have lived with the child and cared for it but the mother and her present husband since the parents were separated have only lived with it for a very short time. So generally the evidence seems to indicate that the natural father is in the better position to care for the child's needs.

However, there are some matters which are in her favor, the most important of which is that she is the child's mother. By nature mothers are a little closer and more concerned and attentive to the needs of a child than are fathers. Their ordinary work is looking after the household affairs and attending to the needs of the children, while the father usually is away from home during the day earning the living, so generally it is easier to replace a father by a step-father than it is to replace the natural mother, especially during the child's tender years. The trial court found that the mother has the natural mother's affection for the child, and was able to make a normal home for him and that it was for his best interest to be in her custody and control. In view of his greater opportunity to study this problem and the closeness of the evidence from the cold record we affirm the award of custody in the mother, but only for a trial period of one year. In view of the evidence of instability of the mother and her present husband, their past and present home and financial conditions and their marital experiences and the shortness of the period of time that the child has lived with them, the mother should report back to the trial court with the child at the end of the one-year trial period for a re-examination of the situation in the light of developments during said period. After such hearing the court should award the custody of the child in accordance with its best interests.

Case is remanded to the trial court with directions to modify the judgment to conform with this opinion. In so doing the trial court should fix a day certain at the end of the trial period on which the mother shall appear with the child to report to the court for a further hearing. Each party to bear his own costs.

WOLFE, C. J., and McDONOUGH, CROCKETT and HENRIOD, JJ., concur.