323 P.2d 16

**Marilyn Barnett JOHNSON, Plaintiff and Appellant,**

**v.**

**Deral John JOHNSON, Defendant and Respondent.**

No. 8648.

Supreme Court of Utah.

March 14, 1958.

Lionel M. Farr, Salt Lake City, for appellant.

Richard C. Dibblee, Salt Lake City, for respondent.

CROCKETT, Justice.

This is an appeal by Marilyn Barnett Johnson from an order modifying a divorce decree relieving her of custody of two minor children of the parties, Sheryl Ann, 14, and Dawnell, 8, and awarding such custody to the defendant, Deral John Johnson, subject to rights of visitation.

The parties were married in 1941 and lived in Midvale, Utah, where the children were born and, except for very brief periods, have spent their lives thus far. At the time of the divorce in February, 1952, the plaintiff was awarded custody of the children. The defendant has remarried and continues to live in Midvale; the plaintiff remains single and lives in an apartment in Salt Lake City.

For the first two months after the divorce plaintiff and the children lived with the defendant's mother. For the next year and a half the girls were shifted back and forth between the parties as agreed upon by them, but because the older girl was in school, she lived most of the time with her father. In the Fall of 1953, both children went to live with him, it having been decided by all concerned that this would be best for the children for various reasons, including the fact that it was the only home the children knew, and their attachments through church, school and friends made them desire to live there.

As time went on plaintiff found it increasingly hard to visit and spend time with the children. Difficulties in transportation, conflicting time schedules, and the fact that she worked, all combined to limit her opportunities to be with them, and she gradually sensed that she was becoming less and less a part of their lives. Her apprehensions of detachment were not alleviated by the fact that the second Mrs. Johnson, Linda, appears to have genuine love and affection for the girls and they for her. The plaintiff complains that Linda is taking her rightful place as the natural mother in the children's affections. That

this might be distressing to the plaintiff is understandable and certainly engenders sympathy for her position, but it is obviously a great boon to the children living in their father's home. While the parents are entitled to some consideration, the paramount objective in such proceeding is not therapy for them, nor vindication of asserted parental rights, but is the welfare of the children.

Circumstances such as existed here, where divorced parents love their children and each maintains an active interest in them and desires their custody, have inherent conflicts which make it exceedingly difficult for the parties to exercise the good judgment and forbearance of personal desires necessary to a balanced and harmonious relationship so the children may enjoy the love and companionship of both parents. But no one will deny that they should do so to the greatest possible degree consistent with the limitations of such a situation. The record here indicates that these parents were not unaware of this desideratum and that there has been a reasonably tolerant and cooperative attitude on both sides. However, the tensions of the situation described, together with some minor unfortunate incidents, which need not be detailed, finally formed a syndrome of pressures which impelled the plaintiff to demand that the children be returned to her custody, which resulted

in this proceeding in 1957. The trial court found that both parents were fit to have custody of the children, but in view of the facts that they had been living in their father's home substantially all during the five years since the divorce, where they were well adjusted and happy, and both desired to remain there, decided that it was to their best interest and welfare to remain with their father, subject to plaintiff's right to visitation, and made the order accordingly.

The plaintiff makes three points in support of her charge that the trial court erred in changing the custody of the children to their father. The first of these relates to procedure at the hearing: that it was error for the judge to confer privately with the children, and particularly with the youngest girl, Dawnell, and to permit her to express a preference as to whom she wanted to live with, because she was under 10 years old. This, the plaintiff avers, is inconsistent with Sec. 30–3–5, U.C.A.1953, which provides in reference to children under a divorce decree:

"* * * If any of the children have attained the age of ten years and are of sound mind, such children shall have the privilege of selecting the parent to which they will attach themselves."

In Austad v. Austad [1] we had occasion to consider a similar assignment of error.

1. 2 Utah 2d 49, 269 P.2d 284, 291, 48 A.L.R.2d 256.

Therein, in regard to interviewing the children, we said, "The desirable way is for the parties to stipulate as to how the court may do it and such is the usual procedure. If counsel desire to be present, the privilege should be accorded unless some compelling reason to the contrary exists." That procedure was followed here. Judge Larson talked to the attorneys and explained that he thought he could better appraise the situation by talking to the children separately, without counsel and without recording what was said, and concluded:

"* * * if counsel have any objections to that procedure, you may voice it."

Mr. Lionel Farr (for plaintiff):

"Plaintiff has no objection to that procedure."

The judge stated that the results of the conference would be indicated in the record, which was done; the essence thereof was that the girls desired to continue to live with their father at their home in Midvale. There is nothing whatsoever to support the idea that the judge thought the preference stated by the child was binding upon him. The record rather reflects that he correctly regarded the expression of preference as mere advice as to the desires of the child and as only one of the factors to be considered in determining what course would best serve her welfare. There was nothing inimical to the rights of the plaintiff in the procedure followed.

▮ Plaintiff also relies upon the provisions of Section 30–3–10, U.C.A.1953, which provides that:

"*In any case of separation* of husband and wife having minor children, the mother shall be entitled to the * * * custody of all such children; (exception same as 30–3–5 hereinabove quoted that children above 10 may select) [unless] * * * it shall be made to appear * * * that the mother is an immoral, incompetent or otherwise improper person, * * *"

and urges that inasmuch as there was no finding that she was an unfit parent she is absolutely entitled to the custody of Dawnell.

The question thus posed was treated in extenso in Sampsell v. Holt,[2] wherein Justice Wolfe pointed out the distinction between 30–3–10 which by its language concerns cases of "separation" whereas Section 30–3–5 is expressly applicable to

"divorce." It begins, "*When a decree of divorce is made* the court may make such orders in relation to the children,. * * * as may be equitable. * * *"

2.  115 Utah 73, 202 P.2d 550, 552.

The law with respect to this issue is well summarized by Chief Justice McDonough in the recent case of Steiger v. Steiger:[3]

> "This court has stated that a divorced mother has no absolute right to the custody of minor children * * * but the policy of our decisions has been to give weight to the view that all things being equal, preference should be given to the mother in awarding custody of a child of tender years, * * * and this view is based upon the oft-stated purpose of the award of custody to provide for the child's best interests and welfare. * * *" (Citing authorities.)

The instant case is a good example of the undesirable and impractical results that would emanate from adopting the view urged by plaintiff that the court must invariably, in all circumstances, award the custody of children under 10 to the mother unless she is found to be an immoral or incompetent person; it likewise exemplifies the wisdom of the prior adjudications of this court that questions of custody are always equitable and that the controlling consideration is the welfare of the children involved.[4]

The plaintiff can advance no basis upon which to attack the award of custody to the older girl, Sheryl Ann, to her father. To compel the little sister to leave the home under duress would deprive both of many values important in their lives, including the companionship of each other. It is to be kept in mind that the choice the girls made does not indicate loss of love or regard for the plaintiff, nor can it be taken in any respect as a rejection of her as their mother. Their choice, and, more important, the decision of the court, were based upon considerations of their total environment, including the only home they have known; and their friendships and attachments through school, church and social contacts. Parental love must find expression, to some extent at least, in sacrifice for the happiness and welfare of children, rather than in merely insisting upon privileges of parenthood.

The trial court discreetly discussed these matters with the parties and admonished that they give due consideration to them and re-evaluate their relationships to the end that the best and happiest situation for the children and themselves be worked out and maintained. Due to the equitable nature of such proceedings, the proper adjudication of which is highly dependent upon personal equations which the trial court is in an advantaged position to appraise, he is allowed considerable latitude of discretion and his orders will not be dis-

3. 4 Utah 2d 273, 293 P.2d 418, 420.

4. Walton v. Coffman, 110 Utah 1, 169 P. 2d 97; Smith v. Smith, 1 Utah 2d 75, 262 P.2d 283.

turbed unless it appears that there has been a plain abuse thereof. We cannot say that he did so here, but rather are impressed with the wisdom in which he handled a difficult situation.

The other point urged by plaintiff is that no substantial change of circumstances was shown to warrant a change of custody.[5] What has been said above in regard to the other issues reflects the different situations of the parties and the attachments of the children over several years sufficiently to render unnecessary any further discussion of that contention.

Affirmed. No costs awarded.

McDONOUGH, C. J., and WADE and HENRIOD, JJ., concur.

WORTHEN, Justice.

I dissent. I recognize that the decision of the able trial judge was not inconsistent with the best interest of the children. Likewise, he was justified in reaching his conclusion without any limitation being imposed by reason of Section 30–3–10, U.C.A. 1953, in view of the holding of this court in the case of Sampsell v. Holt.[1]

The majority opinion with tender words and overreached suggestions as to what sacrifices a parent should make seeks to soothe the feelings of the mother by beauti-ful platitudes that would seem to indicate that the only lot of parents is to suffer for their children. With such philosophy I find myself in hearty disagreement. The relationship of parent and child should be, and for the most part is, a happy companionship where we find mutual trust, love, and indulgence.

The majority opinion observes that Section 30–3–10 was treated in *"extenso"* in Sampsell v. Holt, supra, "wherein Justice Wolfe pointed out the distinction between 30–3–10 which by its language concerns cases of 'separation' whereas Section 30–3–5 is expressly applicable to 'divorce' * * *".

The majority opinion quotes language used by Chief Justice McDonough in the case of Steiger v. Steiger.[2] That case did not, like the Holt case and the instant case, concern itself with the question of change of custody after the divorce was granted but only with the award at the time of the divorce.

In my opinion the custody of Dawnell, age 8, should have been left with the mother, and I am likewise satisfied that except for the decision of this court in the Holt case the trial court would not have disturbed the custody of the younger girl. In fact this court in that case stated:

---

5. Re necessity to show change see Gale v. Gale, 123 Utah 277, 258 P.2d 986.

1. 115 Utah 73, 202 P.2d 550.
2. 4 Utah 2d 273, 293 P.2d 418.

"We are not unmindful that prior opinions of this court have intimated that Sec. 40-3-10 was applicable to divorce actions. In all probability that section is generally understood by the bench and bar of this state as being applicable to divorce suits. * * * "

In the Holt case, supra [115 Utah 73, 202 P.2d 553], this court after tracing *incompletely* the legislative history of Sections 30-3-5 and 30-3-10, observed:

"* * * Apparently it was the intent of the Legislature to provide some rules for the custody of minor children during the times when the parents were separated by agreement, or by refusal of one to cohabit with the other, but before any judicial decree of divorce had been made. The words 'in any case of *separation*' used in Sec. 40-3-10 are not without significance. Had the legislature intended the terms of that section to apply in cases of divorces, it would more accurately have used the word 'divorce' instead of the word 'separation.'"

I fail to see any cogency to the reasoning of the last quoted sentence. It appears to me that if the legislature had intended that section to apply only to cases other than divorce it would more accurately have used the words "in any case of separation of husband and wife having minor children other than where a divorce is sought, the mother shall be entitled to the care, control and custody of all such children."

In the Holt case, supra, this court said,

"Moreover, it seems unreasonable to attribute to the legislature a purpose or intent to give a divorced mother an absolute right to the control and custody of a child under ten years of age, without regard to the best interest of such child. * * * "

But I fail to see any more unreasonableness in giving to a divorced mother an absolute right to the control and custody of a child under ten years of age than to give the absolute right to the control and custody of such a child to a mother who removes herself from the family home or who refuses to cohabit with her husband without obtaining a divorce.

However we are not so much concerned with the view of this court as expressed in the Holt case as to what seems unreasonable as we are in determining what the 1903 Legislature and the 1933 Legislature intended Section 30-3-10, U.C.A. 1953, to mean.

I am of the opinion that Section 30-3-10 originally enacted by the 1903 Legislature relates to separation resulting from divorce as well as from any other cause and was properly put in the chapter on divorce by C.L.1907 and has properly been retained in that chapter at all times since.

. It should be observed that Section 30–3–5, U.C.A.1953 (Section 1212 R.S.1898) vested in the court the power to make such orders in relation to the children—as may be equitable, with the election in children 10 years of age or older as to which parent they would attach themselves. That section gave absolute authority to the district court to take a child under 10 regardless of its age and dispose of it even by taking it from both parents.

It is not surprising that the legislature sought to protect both the child and its mother by declaring a policy founded in reason and experience, that the mother should have the custody of children under 10 unless she is "an immoral, incompetent or otherwise improper person." When she is thus disqualified the court may make such order as may be just.

Section 30–3–10, U.C.A.1953, on its face deals with all cases where the husband and wife separate whether or not such separation ripens into divorce or results from divorce, and I cannot concede that the Legislature intended to limit its application only to those infrequent cases where parents separate without filing an action for divorce.

The opinion, in Holt case, supra, in dealing with the legislative history of Section 30–3–10, U.C.A.1953, completely ignores the 1933 revision of the laws of Utah. It may be conceded that the order of compilation of the laws of the state are not controlling in determining legislative intent but a revision of the laws is a different matter especially when made as was the revision of Laws of Utah in 1933.

In 1933 the Statutes of Utah were revised. The revision was originally authorized by an act of the Seventeenth Legislature, Chapter 16, Laws of Utah 1927. The act provided for the appointment by the Supreme Court of a code commission which should have the duty to revise, codify, edit and compile all the laws of the state including those enacted by the regular session of the 1927 Legislature.

Section 2 of that act set out the duties of the commission, including the following:

"The commission shall carefully revise, codify, edit and compile all the laws of this State including those enacted by the seventeenth regular session of the legislature of this State, and in so doing shall:

"(a) Exclude all titles and enacting clauses and other formal and unnecessary parts and all laws and parts of laws which have been repealed, or are obsolete or of a temporary character;

"(b) Renumber and rearrange titles, chapters and sections and make new title and chapter headings where expedient."

Chapter 61 of the Laws of Utah, 1931, provided for the appointment of a committee of members of the 1931 Legislature to supervise the completion of the work. This committee presented its report, together with a bill containing the text of the proposed revision to the 1933 Legislature. The revision was duly considered by that body at its regular session and passed with minor amendments, to become effective upon proclamation of the Governor. It should be observed that the 1933 revision is the only revision of the statutes of Utah since 1898. The 1933 revision occurred 16 years before the decision of this court in the Holt case, supra.

Chapter 76, Laws of Utah 1933, provided:

"Section 1. Adoption for Purpose of Amendment and Repeal.

"The statute book containing the text of the Revised Statutes of Utah, 1933, certified to the secretary of state by the president of the senate and the speaker of the house of representatives by authority and direction of this session of the legislature is *approved, adopted* and *legalized* as to *arrangement of said text by title, chapter, article* and *section* for the purpose or amendment of repeal of said text in whole or in part by reference thereto." (Emphasis added.)

Chapter 77, Laws of Utah 1933, provided:

"That the statute book containing text of the Revised Statutes of Utah, 1933, certified to the secretary of state by the president of the senate and the speaker of the house of representatives by authority and direction of this session of the legislature *be and the same hereby is approved, adopted* and *legalized* as to *arrangement of said text by title, chapter, article* and *section* for the purpose of official publication of said Revised Statutes of Utah, 1933." (Emphasis added.)

In the Report of the Legislative Code Committee to the (Special) Session of the 1933 Legislature the committee made a detailed report on each title of the text of the proposed revision bill in numerical sequence.

As to Title 40 (Now Title 30) it reported:

"Title 40. Husband and Wife.

"The Bar reader approves the efforts of the Revision to clarify the provisions as to when a marriage after divorce is valid; as to the time for taking an appeal in divorce proceedings; and the harmonizing of conflicting statutes as to the age of a child when he may elect which parent he will accompany."

272

A review of Sections 30–3–5 and 30–3–10 will disclose that prior to the 1933 Revision Section 30–3–5 gave the election as to the parent he will accompany to any child of the age of 10 or over whereas Section 30–3–10 gave such election only to a child who had attained the age of 12 years.

From the report of the Code Committee addressed to the Legislature, page III appears the following:

"* * * There has been no revision of our laws since (1898) up to this time. A convention developed to print a compilation of existing laws every ten years, and the Compiled Laws of 1907 and of 1917 were prepared and adopted accordingly, containing the various amendments and new laws passed by the several Legislatures between times. The Legislature of 1927 was confronted by the necessity of either ordering another compilation or a general revision, and it determined, wisely as we believe, that a general revision was imperative. * * * No intelligent man can do less than realize and admit that a general revision of the laws is necessary, but we must confess that until we undertook this work we did not fully comprehend how vast was the amount of inconsistency and contradiction in existing laws. The work of the Code Commissioners is entitled to great credit insofar as it brought harmony into this conflict."

In its report with respect to a new title on Child Welfare the Code Committee stated:

"Title 14. Child Welfare.

"The Code Commissioner did an excellent thing, in our opinion, in *setting up this new title*. It serves *to designate a place* where *a substantial amount of statutory law* can be logically assembled; and it is modern and coming into general use. Legislatures in recent years have given attention and much thought to the saving of the child at the source so that the standard of future citizenship may be elevated. * * *" (Emphasis added.)

It would be strange indeed that the Code Commission, appointed by this Court in 1927, and the Code Committee appointed by the Legislature by Chapter 61, Laws of Utah 1931, putting in a total of six years in revising and codifying the statutes and after providing a new title on Child Welfare, "where a *substantial amount of statutory law can be logically assembled*," should overlook this new title as an appropriate place to put the act of 1903 regarding the custody of children in case of separation, if they did not consider Section 30–3–10 applicable to separation in the event of divorce, and appropriately a part of Title 30 (Title 40, Revised Statutes 1933). And it is doubly strange that said revisers did not put that section in Chapter 4 of Title 40 [Separate Maintenance] if it was inappli-

cable to a case of separation in connection with divorce. It should be observed that Title 29 of Revised Statutes of 1898 (Husband and Wife) contained one chapter on Divorce and one on Separate Maintenance and that separate chapters for Divorce and Separate Maintenance were found in every compilation and revision since 1898.

Nor do I think Section 30–3–10 authorizes a court to take a child under 10 from its mother under a petition for modification unless such mother is then disqualified under the terms of that section. To hold otherwise and say that it applies only at the time of separation would permit the husband to petition for modification immediately after the divorce and contend that the provision has no application—that it applies only when the separation takes place and at no time thereafter.

Even under the decision in the Holt case, supra, likewise it could be argued that if the mother left the home and took a child under 10 that the right to continue to have the child, even when she is not disqualified under that section, would not apply if the husband filed for divorce on Habeas Corpus or filed an action to recover possession of the child.

I think the Holt case overturns clear legislative intent and I would overrule it and follow the plain language of Section 30–3–10, U.C.A.1953.